Judge Ewing

delivered the Opinion of the Court.
A company was incorporated to construct a toll bridge across the Kentucky river at Frankfort. They constructed one which answered all the purposes of its construction, until, by time and the action of the elements, it gave way and fell. They constructed another, upon a new plan; which, while the appellee’s waggon and team, driven by his slave, were passing it, gave way and fell, within twenty four hours after it was completed, and they, were precipitated into the river, tjhe slave and two horses *404 killed, two others wounded, and the waggon and gear broken to pieces.
The declaration as to which vide post.
Instructions, &c.
The responsibilities of the proprietors of a toll bridge, are not the same as those of common carriers. The latter, having the custody, care and control of the goods they carry, have peculiar oppurtunities for combinations and collusions with robbers, thieves, &c. & are, therefore, held to a resposible so high, that nothing but an act of God, or the enemies of the country, will excuse them from liability for the loss of, or injury to, the goods.—The persons and property passing a bridge are not subject to the control, nor under the care of, the proprietors of the bridge, and are not exposed to all the dangers to which goods in the hands of common carriers are liable. The proprietors, therefore, are not liable to the same extent. But they are bound to use at least ordinary care & diligence in the construction of the bridge and in keeping it in proper order; and, for any injury which may result from their negligence in this respect, they are liable in damages And query, whether they are not bound to the utmost care & vigilance, and liable for even slight negligence.
*404 The appellee sued the Company, in case, for the injury he sustained, declaring in three counts.
The first count, after charging upon the company the duty to build a good and safe bridge, avers that they constructed one upon a new plan, with the centre space double as long as the space of the former bridge, with delicate, brittle and insufficient materials, and the workmanship badly executed; by reason whereof it gave way and fell, and the injury accrued to the appellee.
The second count, after charging the same duty, avers that the bridge was carelessly, negligently and unskilfully built, with brittle and insufficient materials, and in an unworkmanlike manner, and after a bad and unsafe plan.
The third count charges the company as common carriers; making no averment that the injury had accrued by reason of the negligence or want of due care in the construction of the bridge.
Each of the counts were demurred to, and the demurrers. overruled, and the cause tried upon the general issue.
Upon the trial, the defendant’s counsel asked for their instructions, which were overruled by the Court, and the following instructions given:—
“That if the jury find from the evidence, that the “plaintiff’s property was injured by the fall of the bridge, “they should find for him, the damages which he may “have sustained. But if they should also find that the de“fendants bestowed ordinary care and diligence in the “construction of the bridge, and that they used ordinary “ care and attention to its condition, at and before the “time it was opened for passage until it fell, and could “not aspertain its unsafe condition, then their verdict “should be for the defendants.”
The jury found a verdict for the plaintiff, for eight hundred dollars in damages; and a motion for a new trial being overruled, a judgment was rendered for the amount; from which, the Bridge Company has appealed.
We cannot agree with the counsel for the appellee, that the responsibility of the company, should be made to rest upon, the same ground as common carriers. There. *405 is an essential difference between the duties to be performed by each. The custody, care and control of goods are committed to common carriers, to be transported from one place to another. In their transportation, they are exposed to perils, from secret thefts and open robberies, which may be perpetrated by persons in secret concert with the carrier, brought about by his means, and planned and arranged so cunningly, as to evade the possibility of detection. For the benefit and promotion of commerce, and the security of society, upon the great principle of public utility, to which private considerations must always yield—the common carrier is made responsible for all losses or injuries in whatever form they may come, without excuse, unless they happen by the act of God or the country’s public enemies.
But the Bridge Company has not the custody or control of property or goods that are transported, or of the persons who pass over; but the former is committed to the control, guidance and direction of the owner or his servant or agent, and the latter to his own will. And the property transported is not exposed to the same hazard from secret combinations. It would seem, therefore, that the essential reason which dictated the rigid rule of responsibility with respect to common carriers, are not applicable to the duties or employment of the Bridge Company, But though they are not responsible as common carriers, their bridge is a public one, constructed under the sanction of legislative , enactment, m which they have a peculiar privilege, and for a passage on which they have a right to exact tolls. The public is deeply interested in its being a safe bridge. The security and safety, of the lives of the citizens, as well as their property, require that it should be constructed with care and caution, and its condition and safety well looked to, by the company, before they open their gates, and hold out to the public, inducements to venture upon it. It is not to be expected that the citizen, when he approaches the bridge, will alight and examine for himself, to ascertain whether the bridge has been constructed in a workmanlike manner, or upon a suitable or safe plan, or with proper materials. But he has a right to look to, and trust in, the company, that *406 those things have been attended to, and that the bridge is safe.. If, therefore, the company have not attended to those things, with ordinary vigilance at least, they are most unquestionably liable to any person who has been injured in their person or property by reason thereof. And in this opinion, and fully to this extent, we are sustained by the opinion of the Supreme Court of New York, in the case of Townsend vs. The Turnpike road Company, 6 John. 90. And in this, their responsibility is made to stand upon the same ground, and no higher, that the warehouseman, or hirer of property, or undertaker of a private work for a reward, stands on.
The mere opinion and belief of the proprietors of a toll bridge, that it is safe, will not excuse them from liability for injuries arising from its defects: they are bound to ascertain its condition with reasonable certainty, not trusting to the opinions of interested or incompetent persons; they should avail themselves of the judgment of such as are disinterested, skilful and experienced ced in such matters.
*406 Indeed, it might well be questioned, whether the safety of the public, and the security of the lives and property of the citizens, do not demand that they should exercise the utmost care and vigilance, in looking to the erection, and the state and condition of the bridge, or be made responsible, if they are guilty of only slight negligence in any of those particulars, But we do not deem it necessary to determine this question now, as the instruction of the Circuit Court has rested the responsibility of the defendants below, upon the exercise of ordinary diligence alone, and under that instruction the jury have found against them. We are clearly of opinion that the instruction of the Court did not go too far, nor can be regarded as interpreting the law too strongly against the defendants.
Nor do we think that the Court erred to the prejudice of the defendants below, in rejecting the instructions asked by their counsel; as well for the reason that those instructions made the exemption of the defendants, rest upon their opinion or belief that the bridge was safe, as that the instructions given by the Court, in their stead, was as favorable to them as the law entitled them to ask-and was as fair and full an exposition of the law of the case upon the matters to which those instructions related, as was proper to be given.
It will not suffice that the company believed the bridge was safe; but it was their duty, at least, to use ordinary vigilance and precaution to find out and know with reasonable certainty, that it was safe, before they opened their *407 gates and held out inducements to the citizen to commit his life and property to the hazard of passing over it. They should not, therefore, have trusted to an opinion or belief formed on the representations of an interested undertaker alone, but should have looked with care and vigilance to the materials, the plan, the structure and workmanship, of the bridge, and have availed themselves of information received from other disinterested workmen, to form a correct and safe judgment with respect to its safety. And having failed to do so, they may be made responsible for the injury complained of.
The declaration ante: held, that all the counts are in tort, no one in assumpsit, & no misjoinder.
Counts in case, for a loss by the falling of a bridge which merely allege its insufficiency, without charging negligence on the part of the defts. are not sufficient.
A count charging the defendants as common carriers might do, if it also, charges that the injury was the result of their negligence.
A verdict—rendered under proper instructions—must be sustained, if there is any good count in the declaration, tho’ there are other counts not good, and to which, demurrers were erroneously overruled.
Each of the counts of the declaration maybe construed to be a count in case for a tort, and not an assumpsit. There was, therefore, no misjoinder of distinct causes of action.
But the first and third, counts are both technically bad, in failing to aver, in distinct terms, the negligence of the company in the erection &c. of the bridge; The bare fact that the company are charged as common carriers, in the third count, would not render the count bad, provided such negligence had been averred, as would render them legally responsible. But though the first and third counts are bad, for the reason aforesaid, the second count is good, and contains all the necessary averments to redder the company responsible, in case, for negligence. And though the court erred in not sustaining the demurrers to the first and third counts, it was an error by which the defendants have not been prejudiced, as by the instruction of the Court, the jury were directed to the finding of those facts, as essential to a verdict for the plaintiff, which were alone averred in the second count. And though, therefore, the verdict is general in its terms, it must be presumed to have been a finding upon the second count, which is good.
But the verdict is good under the statute, which sustains a general finding if there be a good count, though there be other counts that are bad, and should not be set aside for a formal error of the Court, in overruling demurrers to the two bad counts, by which, under the instruction of the court and the proof in the cause, the defendants could have been in nowise prejudiced in the re *408 sult. To set aside the verdict for this formal error, would be departing from the spirit of the statute; if not from its letter.
Facts held sufficient to sustain a verdict upon a count charging negligence in the construction of a bridge.
Without stopping to detail the evidence at length, it is sufficient to say, that there was testimony going to show that some of the timbers used in the construction of the bridge, were too small; of brittle materials, and the whole in a green state, taken from the forest, and the centre space too long for the strength of the materials, and the workmanship; in many respects badly executed, and done at an improper season of the year, when the ice had to be dug out of the mortices to insert the tenants. And these things, the agent of the company was frequently advised of, during the progress of the work, by a skilful workman, who expressed it as his opinion, that the plan would not answer, nor would the bridge stand. And though a different opinion is proven to have been expressed in the presence of the agent by others, and particularly by the undertaker—as, upon the whole evidence, the jury have found for the plaintiff below, we think their verdict ought not to be disturbed. It is, therefore, the opinion of the Court, that the judgment of the Circuit Court be affirmed, with costs and damages.