## L. & N. R. R. Co, v. Rose Loesch.

## L. & N. R. R. Co. v. Howard M, Loesch,

(Decided June 25, 1926.)

### Appeals from Campbell Circuit Court.

1. Bridges—Operators of Toll Bridges, Inviting Use by Public at Night, Must Exercise Ordinary Care in Lighting so as to Provide Safe Means of Travel.—Operators of toll bridges, inviting their use by public at night, must exercise ordinary care to so light whole structure as to provide reasonably safe means of travel to public.

2. Evidence—It is Common Knowledge that Use of Toll Bridge Connecting Thickly Populated Areas Under Modern Conditions is Almost as Great at Night as in Day.—It is common knowledge that use of toll bridge connecting thickly populated areas under modern conditions is almost as great at night as in day, and that myriad of motor cars are using it at all hours.

3. Negligence—Contributory Negligence is Question for Jury, Unless Shown as Matter of Law.—Generally, contributory negligence is for jury, and only when evidence without contrariety shows such negligence as to defeat recovery as matter of law is court authorized to direct verdict therefor.

4. Automobiles—Contributory Negligence of Automobile Driver Crossing Insufficiently Lighted Toll Bridge Held for Jury.—In action for injuries alleged arising from negligent failure to sufficiently light toll bridge, evidence of contributory negligence held for jury, notwithstanding lights on plaintiff's automobile failed to comply with statute.

5. Automobiles—Evidence of Other Accidents on Toll Bridge Used by Automobile Driver Held Inadmissible.—In action for injuries to automobilist on toll bridge, admission of evidence of other accidents happening at same place held error, in absence of evidence of practically similar circumstances and conditions.

6. Evidence—Testimony of Witnesses that Lights on Automobile Conformed to Requirements of Law, Though they Showed Lack of Knowledge of Requirements of Law, Held Incompetent.—Testimony of witnesses that lights on automobile conformed to requirements of law, though they showed lack of knowledge of requirements of law, held incompetent, but evidence should have been confined to nature of lights, what light was given, and how far it shone.

7. Trial—Where Negligence of Operators of Toll Bridge was Predicated on Failure to Light Bridge, Instruction that Operators Must Give Warning by Lights "or Other Means" Held Reversible Error.—In action for injuries to automobilist, predicated solely on failure of operators of toll bridge to properly light bridge so as to disclose guard rail separating tracks from vehicular traffic,

instruction that operators had duty to use care to protect vehicular traffic by giving warning by lights "or other means" of presence of obstruction held reversible error.

· WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN and MATT HEROLD for appellant.

ARTHUR C. HALL for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing each judgment.

The two appellees are husband and wife, and reside in Campbell county, Kentucky. On the night of the 5th of September, 1923, they with their two small children went across the Ohio river to the city of Cincinnati to attend an entertainment. They went in their motor car, the husband driving, and in returning they used appellant's toll bridge across the Ohio river from Cincinnati to Newport.

Pearl street in Cincinnati runs parallel with the Ohio river at the point where the Cincinnati end of the bridge intersects it, while the bridge across the river runs approximately north and south. On the return trip from the entertainment late in the night the car in which the two plaintiffs were riding came into Pearl street at a point some distance east of the bridge intersection, and then traveled west on that street to the bridge entrance. When they reached that point they stopped the car approximately opposite the entrance to permit the passage eastward of a number of automobiles going in that direction on Pearl street, and when the last car passed they turned south on to the bridge entrance and at a point about 14 or 15 feet from Pearl street, and on the bridge, the car struck a guard rail on the west edge of the driveway, which caused the female plaintiff to be thrown through the wind shield, resulting in injuries to her.

These are two actions, one by the wife and the other by the husband, for damages resulting from that impact with the guard rail, and the negligence charged in each action being the same they were tried together in the lower court, and a verdict and judgment for each plaintiff resulted, for the female plaintiff $5,000.00, and for the male plaintiff $1,850.00, $100.00 of which latter judgment was remitted on the record.

On each side of the driveway maintained on the bridge for vehicular traffic there was a street car track

over which such cars formerly ran to and from Newport and Cincinnati, and the appellant had constructed along the outside of the vehicular driveway on each side, a few feet from the car tracks, a guard rail attached to the floor of the bridge and designed to protect the vehicular roadway from interference from the street cars in the event they should leave the tracks, and also to prevent vehicles from going on the street car tracks. This guard rail consisted of a timber about 14 inches square, running along the bridge for some distance on each side, and on the Cincinnati side extended to within 14 or 15 feet of the Pearl street approach to the bridge. The guard rail where it terminated was square, and stood up at the western side of the roadway approximately 14 inches, and it was with this guard rail that the machine in which the appellees were riding came in contact.

The charge of negligence in each petition is that the maintaining of the guard rail or timber in the manner set forth "rendered said driveway and bridge at said point unsafe and dangerous for vehicular traffic, if reasonably sufficient light were not maintained at night at said place to warn such traffic of the presence of same." It is then alleged that defendant upon the occasion in question had "negligently failed to place or have any light at any time about said bridge in the vicinity of said timber to sufficiently light the same, and thereby warn traffic of the presence of same," and that defendant and its servants and agents knew or could have known of the same in time to have provided sufficient lights at or about the end of the timber. And that plaintiffs without any warning, and because of the darkness of said bridge in the vicinity of the timber, and because the same was insufficiently lighted, were caused to run the automobile upon and against the end of the timber.

The answer denied in the first paragraph the material allegations of the petition, and in a second paragraph affirmatively pleaded the facts showing the necessity for the guard rail at the point indicated, and further affirmatively alleged that defendant maintained an electric light of 500 candle power in the middle of the vehicular roadway 125 feet south of the point of the accident, and that the city of Cincinnati maintained four electric lamps, each of 600 candle power, one at the south-west corner of Pearl and Butler streets 69 feet from the point of the accident, one at the northwest corner of Pearl and Butler streets 86 feet from the point of the accident, one

at the north side of Pearl street opposite the east side of the bridge approach 86 feet from the timber guard, and one at the east side of the bridge approach 49 feet from the timber guard, and that each and all of the lamps were lighted and burning at the time complained of by the plaintiffs, and furnished sufficient light for persons approaching said bridge to see said timber guard and to warn them of the presence of the same at a sufficient distance to avoid running into it.

In a third paragraph defendant affirmatively set up the statute of the state of Ohio requiring lights on motor vehicles, and in the fourth paragraph pleads contributory negligence.

Clearly the petition only charges negligence in one respect, and that is the failure to provide adequate lights upon that portion of the bridge where the guard rail was located by reason of which the plaintiffs' car collided with it; and the first ground for reversal is that appellant owed no duty to light the bridge for night travel, and that therefore the demurrers to the petitions should have been sustained.

The petition does not proceed upon the theory that it was appellant's duty to have located a light upon the guard rail or in the immediate vicinity of the guard rail, as in the case of a temporary obstruction of a public street at night, but is based upon the idea that it was the duty of appellant to have its structure so lighted in that vicinity as to enable its patrons who paid for the privilege of passing over its bridge to see on a dark night the nature of this obstruction on the western edge of the driveway, for it requires no stretch of imagination to understand that such an obstruction upon the driveway of a bridge, standing upright for 14 inches and fastened to the floor of the bridge, would almost of necessity bring about serious consequences if a motor vehicle came in contact with it even at a very moderate speed.

The direct question whether the owner of a toll bridge operated for profit, and who invites the public at all times during the day and night to use its structure for its own private gain, is required upon dark nights to keep the same sufficiently lighted for public traffic, has never been passed upon in this state.

Strangely enough the authorities upon the direct question are few, although they are practically unlimited in number upon the general proposition that it is the duty of the operator of such a bridge to exercise ordinary

care to keep the same in a reasonably safe condition for public travel. In this case the structure connected the city of Cincinnati, of several hundred thousand inhabitants, on the Ohio side of the river, with a thickly populated area of 100,000 or more population on the Kentucky side of the river, and the company invited the patronage of the public and charged tolls for the use of its structure; that invitation included its use not only during the daylight hours but during the night time, and we know as a matter of common knowledge that in such a thickly populated area under modern conditions, the use is almost as great during the night time as it is in the day, and that the myriad of motor cars ever present in thickly populated sections of America are necessarily traversing such a bridge during all hours of the night. Under such conditions the protection of the lives and property of the traveling public requires that the duty should rest upon the operators of toll bridges inviting their use by the public at night, to exercise ordinary care to sufficiently light the same at such times as to protect travelers and their property from injury. They are not, however, insurers of the persons or property of their patrons, or even charged with the same duty as common carriers, but it is their duty to use ordinary care to properly construct and maintain their bridges and keep the same in reasonably safe condition for the character of travel they invite over them.

Obviously a bridge company which charges the public for the use of its structure, and who invites its use during the night time, should during such time furnish adequate artificial light to enable the public to so use its structure with reasonable safety. Such duty is embraced within the general duty imposed by law to keep the same in reasonably safe condition for travel; for unless the traveler is supplied with such light as enables him to evade obstructions, or other dangers, including other vehicles or passengers that may then be upon the structure, then the duty of maintaining the bridge in reasonably safe condition for public travel during the night time has not been complied with.

One of the early cases on the subject in America was that of Com. v. Central Bridge Corporation, 12 Cushing 242. There the corporation was charged in its charter with maintaining its toll bridge at all times in good, safe and passable repair, and the court held that

the question whether the company had failed to suitably light its bridge at night so as to render it unsafe was properly submitted to the jury. It is true in that case there was a covered bridge, which probably emphasized the necessity for lights at night; but the case is conclusive of the general proposition that a toll bridge company charged with the general duty of keeping its structure in reasonably safe condition for travel must keep the same adequately lighted at night. The charter provision in that case imposed upon the bridge company no greater duty than the general rule of common law imposes when it requires such company to maintain its structure in reasonably safe condition for public travel; in each case there is imposed a duty to the traveling public.

In the English case of Parnaby v. Lancaster Canal Co., 39 English Common Law Reports 54 (11 Adolphus & Ellis 223), the company had constructed and was operating a canal and a boat was sunk therein; the obstruction was neither promptly removed nor were lights or signals displayed by the company to indicate its presence. It was a toll canal, and another boat while navigating the same ran into the obstruction because of the failure to have lights or signals, and the court in holding the company liable said: "The company made the canal for their profit, and opened it to the public upon the payment of tolls to the company; and the common law, in such a case, imposes a duty upon the proprietors, not perhaps to repair the canal, or absolutely to free it from obstructions, but to take reasonable care, so long as they keep it open for the public use of all who may choose to navigate it, that they may navigate it without danger to their lives or property."

Other authorities to the same effect are Washington, etc., Turnpike Company v. Case, 80 Md. 36; Stephani v. Manitowoc, 89 Wis. 467; Manley v. St. Helens Canal & R. R. Co. (Eng.), 2 H. & N. 840; Chicago v. Powers, 42 Ill. 169; Conowingo Bridge Co. v. Hedrick, 95 Md. 669; 9 C. J., pp. 475, 478; 4 R. C. L., pp. 208, 219; Frankfort Bridge Com. v. Williams, 39 Ky. 403.

We have no doubt that under the principle announced in these authorities appellant owed the duty to exercise ordinary care to so light its whole structure at night time as to provide a reasonably safe means of travel thereon to the public, and especially should such a duty be imposed under modern conditions when such

structures, in thickly populated communities, are often swarmed during the night time with motor car traffic.

But it is said for appellant that even if it owed the duty, the bridge was in fact adequately lighted as shown by the evidence. For the reason that there must be another trial of these cases we will not go into the details of the evidence on this subject, but content ourselves by saying that the evidence for the appellant on this issue was, to say the least, of such potency and probative force as to authorize its submission to the jury.

It is likewise urged for appellant that the contributory negligence of appellees was such as that defendant was entitled to a directed verdict. Generally speaking the question of contributory negligence is one for the jury, but in cases where there is no contrariety in the evidence, and it shows the plaintiff was contributorily negligent in such way as to bar his right of recovery as a matter of law, then and then only is the court authorized to direct a verdict for that reason.

The burden of complaint on this score is that the Ohio statute required the appellees to have at least two lighted lamps of equal candle power upon the front of their machine, and such as to enable the occupants to see an object ahead on the highway for at least 200 feet, when the machine is operated during the night time. The appellee Howard M. Loesch in his evidence stated that the lights on his machine at the time of the injury lighted the highway ahead of him only 75 or 100 feet, and it is urged that, as he was thus shown by his own admission to have been violating the statute of Ohio where the injury occurred, he was guilty of contributory negligence as a matter of law, and should not be permitted to recover. The evidence, however, shows that at the time he turned his machine from Pearl street into the bridge entrance he was not over 50 or 60 feet from the end of the guard rail where the collision occurred, and obviously, therefore, his lights while not complying with the statute were sufficient to have indicated this structure if the bridge itself had been sufficiently lighted. Not only so, there is evidence tending to show that as his machine entered upon the structure at the intersection with Pearl street the lights from his machine, because of the elevation, shone above the guard rail whereby they were ineffectual in disclosing its location. We have no difficulty in holding, under this state of the

record, that the question of contributory negligence was one for the jury.

Appellees were permitted on the trial to introduce evidence of other accidents happening at the same place, and of this serious complaint is made. The trial court admonished the jury that such evidence was to be considered only for the purpose of throwing light on the question of knowledge of defendant as to the condition at the time of the accident.

Accidents may and do happen frequently in unaccountable ways, and the facts and circumstances in any two of them are rarely identical, or approximately so; the facts and circumstances leading up to one accident at the same place as another can rarely furnish any light upon an investigation of what caused the other accident. The general rule, therefore, seems to be that evidence of a previous accident at the same place is incompetent upon the investigation of the cause of a subsequent one. Brucker v. Gainesborough Telephone Co., 125 Ky. 92; Hughes v. G. E. L. & P. Co., 107 Ky. 485; Louisville Water Co. v. Weis, 25 R. 808; J. M. & I. R. R. Co. v. Esterle, 13 Bush 678; L. & N. R. R. Co. v. Reutlinger, 9 R 814.

It is true this court in the cases of City of Covington v. Visse, 158 Ky. 134, and City of Lebanon v. Graves, 178 Ky. 749, each of which involved an investigation whether a sidewalk for pedestrians was unsafe by reason either of the slippery condition of the sidewalk in the one or the projection of a water meter on to the sidewalk in the other, it was held that evidence of similar accidents theretofore by pedestrians at such places on the sidewalk was competent. But those cases are not similar to this, for as a matter of common knowledge we know that pedestrians in walking on a sidewalk proceed ordinarily at about the same speed and in the same manner, and that, therefore, an accident to one at the same place and caused by the same thing may be evidence of the danger at that point. In this case we have the single question of whether the bridge upon the night involved was adequately lighted for public travel. Therefore, in the absence of evidence that a previous accident had happened at the same place and practically under similar circumstances and conditions, the evidence was improperly admitted. The fundamental objection to permitting such evidence is that it opens up collateral questions upon

which each party would be permitted to introduce testimony, and would therefore make trials practically interminable.

There was likewise permitted to be introduced for appellees the statements of witnesses to the effect that the lights on appellees' automobile conformed to the requirements of the Ohio law, although such witnesses either admitted that they did not know the requirements of that law or disclosed a want of knowledge on the subject. Clearly such evidence was incompetent and should have been confined to the nature of the lights on appellees' car and what light they gave and how far it shone.

In addition to the errors in the admission of evidence above pointed out we are impelled to the conclusion that in at least one respect the first instruction given by the court was erroneous. That instruction told the jury that it was the duty of defendant at the time and place of the accident to use ordinary care to keep the bridge and its approach in a reasonably safe condition for travel, "and to use ordinary care to protect vehicular traffic using said bridge at said place at night time, by giving such notice, by the use of lights *or other means* as were reasonably sufficient to give timely warning to the traveling public of the presence of said timber guard referred to."

The sufficiency of the light at and near the timber guard to disclose its presence to the traveling public at night was the only negligence complained of; there was no complaint that defendant should have used any other means, such as the placing of a guard at that point, to notify the traveling public of the existence of the timber guard, and we are impelled to the conclusion that the insertion of the words "or other means" was not only erroneous but prejudicial to appellant's substantial rights. That such an instruction might have been misleading to the jury is obvious, for they might have assumed under that language it was the duty of the defendant to have had posted at or near the timber guards an employee to especially warn and notify each traveler of the existence of that timber guard, or they might have considered it to be the duty of defendant to use other means of an undefined nature for the furnishing of protection.

In the submission of this issue the one act of negligence as alleged in failing to adequately have the bridge lighted was the only one that should have been submitted.

Because, therefore, of the error in the first instruction and of the admission of the incompetent evidence re-

ferred to, the demands of justice require that a new trial should be had.

The question of excessive damages is expressly reserved.

The judgments are each reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.